# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Tennessee

| | |
|---|---|
| United States of America<br>v.<br><br>DAVID JOHN GOEGLEIN<br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 3:26-MJ-_1083_

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   October 17, 2023 to February 19, 2026   in the county of _____ Knox _____ in the

_____ Eastern _____ District of _____ Tennessee _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of Child Pornography |
| 18 U.S.C. § 2251(a) & (e) | Exploitation of a Child |
| 18 U.S.C. § 2252A(a)(2) | Receipt and Distribution of Child Pornography |
| 18 U.S.C. § 2422(b) | Online Enticement of a Child |

This criminal complaint is based on these facts:

Please see attached affidavit, incorporated herein

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Rollin McGowan, HSI Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___02/20/2026___

_____
*Judge's signature*

City and state: _____ Knoxville, TN _____

Hon. Jill E. McCook, United States Magistrate Judge
*Printed name and title*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

IN THE MATTER OF:

A CRIMINAL COMPLAINT AND
ARREST WARRANT FOR:

DAVID JOHN GOEGLEIN

CASE NO. 3:26-mj- *1083*

**FILED UNDER SEAL**

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

Your affiant, Rollin McGowan, a Detective with the Knoxville Police Department (KPD) Internet Crimes against Children (ICAC) Task Force and being a sworn federal task force officer for The Department of Homeland Security (HSI), being duly sworn, deposes and states the following:

1.     Your affiant has been employed with the Knoxville Police Department since March 22, 2005.  Your affiant has been assigned to the Knoxville Police Department's ICAC Task Force as a Detective and undercover online investigator for the past 3 years.  The Knoxville Police Department ICAC Task Force is responsible for investigating and enforcing federal criminal statutes involving the sexual exploitation of children under Title 18, United States Code, Chapter 110, including, without limitation, section 2251 (production) and 2252 (transportation). Your affiant has acquired experience in these matters through specialized training and everyday work related to these types of investigations.

2.     As a federal task force officer, your affiant is authorized to investigate violations of the laws of the United States and is a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

1

Case 3:26-cr-00019-TAV-DCP     Document 3     Filed 02/20/26     Page 2 of 53     PageID #: 4

3. The information contained within the affidavit is based upon information I have gained from my investigation, my personal observations, my training and experience, and/or information related to me by other law enforcement officers and/or agents. Since this affidavit is being submitted for the limited purpose of a criminal complaint and arrest warrant, I have not included each and every fact known to me concerning the investigation. I make this affidavit in support of a complaint and warrant for arrest of David John Goeglein ("GOEGLEIN"), date of birth, October 07, 1971, for the possession of child pornography in violations of 18 U.S.C. §§ 2252A(5)(B); 18 U.S.C. § 2251(a) and (e), for exploitation of a child; 18 U.S.C. § 2252A(a)(2) for receipt of child pornography; and 18 U.S.C. § 2422(b) for online enticement. I have received training in the area of sexual exploitation of minors, including undercover operations involving the possession, enticement, and receipt, of child pornography. Except as noted, all the information contained in this affidavit is either known to me personally or has been told to me by other law enforcement officials.

**THE INVESTIGATION**

4. In August of 2025, HSI- Knoxville was asked to assist in an undercover operation being conducted by HSI- Harrisonburg, Virginia. The investigation included GOEGLEIN using the internet to communicate with whom he believed was a 15-year-old child for illicit sexual conduct. The investigation also included GOEGLEIN communicating with an undercover officer ("UC") posing as a father of a 10-year-old victim in Florida. GOEGLEIN believed he was communicating with the victim's father for illicit sexual acts with the victim.

5. On April 16, 2025, a state search warrant was obtained for GOEGLEIN's Google account. The Google account (GOOGLE) returns showed multiple illicit sexual conversations via texting GOEGLEIN was having or had with minors or their representatives.

2

6.      Based on the evidence, a federal search warrant, attached hereto and incorporated herein, was obtained on December 2, 2025, on the home of GOEGLEIN and executed two days later. The search resulted in the confiscation of 44 electronic devices from GOEGLEIN's residence.  On that same day a forensic analysis began on the confiscated equipment.  The forensic exams are still ongoing.   To date, 8 of the 44 electronics have been found to have CP on them totaling 221 images and 24 videos.  GOEGLEIN's Moto G stylist 5G cellular phone (PHONE1) is one of the electronics in the process of being forensically examined thus far, and was found to contain 4 CP images. A Motorola One 5G Ace cellular phone (PHONE2) has been found to contain 35 images of CP.

7.      The forensic exams of the GOEGLEIN's electronics corroborate the GOOGLE return where GOEGLEIN had multiple communications with minor victims where he was enticing and exploiting his victims for the purpose of illicit sexual conduct and/or receiving and possessing child pornography. One such communication is with tinahighly@gmail.com:

| | |
|---|---|
| GOEGLEIN: | Hey!! Any lil humps on your chest yet? I'm really wanting to meet! |
| GOEGLEIN: | What do you look like? |
| TINAHIGHLY: | 4 ft 5 inches, brown hair 75 pounds. |
| GOEGLEIN: | Do you wear a bra yet? |
| TINAHIGHLY: | No. |
| GOEGLEIN: | What will you be wearing when we meet? |
| TINAHIGHLY: | Yellow dress. |
| GOEGLEIN: | Shorts, button shirt. |
| | Want me to have on boxer? Or none? |
| [Later in conversation] | |
| | How come you don't want to wear boxers? |
| TINAHIGHLY: | I can put my hand in you shorts. |

3

Case 3:26-cr-00019-TAV-DCP   Document 3   Filed 02/20/26   Page 4 of 53   PageID #: 6

a) GOEGLEIN requested a picture from tinahighly@gmail.com in which she sent a face picture. The victim's, tinahighly@gmail.com, face image that was sent to GOEGLEIN appears to be between 10 years of age to 13 years of age. GOEGLEIN then asked if tinahighly@gmail.com was going to show him "her kitty or her ass?"

b) On October 17, 2023, at 09:55:01 pm UTC, tinahighly@gmail.com sent GOEGLEIN a picture of her from the waist down. The victim's jeans are pulled down exposing her vagina. Based on my training and experience, the vagina appears to be that of a 10- to 13-year-old female. GOEGLEIN reciprocated by texting tinahighly@gmail.com a picture of his erect penis. During the communication, GOEGLEIN sent an image of his face with sunglasses on. That same images was located on a San Disk Cruzer seized during the execution of the search warrant for GOEGLEIN's home.

8. The GOOGLE return and PHONE2 revealed GOEGLEIN was also communicating with a child he believed to be 12 years of age whom he referred to as "Liama" (liama00116@gmail.com). It was discovered in the preliminary forensic exam on PHONE2 the same CSAM images as those in the GOOGLE communications.

Liama sent GOEGLEIN an image of her face.

GOEGLEIN: Wow! You are very beautiful. Can[sp] I wait to be aggressive with you… Your hair will make a good handle…I know you are exactly what I want. Can I have a full body pic of you? Front and back.

Liama sent an image of her naked in the mirror showing her back and buttocks. The conversation turned to GOEGLEIN travelling to Alabama to pick her up and "Keep her."

GOEGLEIN: By the way you have a really nice chest for 12. Ass too. Curious, do you have a picture of your vagina and or chest?

4

Communication continued with the expectations of Liama being a submissive sex slave to GOEGLEIN.

| | |
|---|---|
| Liama: | I am def willing 2 b taken by a strict n formal man like u. |
| GOEGLEIN: | Good send me a picture of you for your lack of Communication. |

Liama sent a CSAM image of her buttock cheeks spread displaying her vagina.

| | |
|---|---|
| GOEGLEIN: | Very good girl. I love your little butt. |

On the same day GOEGLEIN texted:

| | |
|---|---|
| GOEGLEIN: | You keep disappearing. So show me your serious. Take off all your clothes go to the mirror and take a picture and sent it to me. |
| Liamal | it is my honour [sp] 2 work in the home of a strict n formal white man n b obedient. |
| GOEGLEIN: | yes it is. You'll be naked or wearing a thong all the time. |

Liama texted a CSAM image of herself bent over with her vagina exposed.

| | |
|---|---|
| GOEGLEIN: | That is a great little ass. Take another one and put more light on your pussy. |

9.      The preliminary forensic examination of PHONE1 revealed GOEGLEIN had saved an image of the 15-year-old minor the Virginia UC had sent GOEGLEIN in their KIK communications.  GOEGLEIN sent a selfie image of himself and his dog to the UC during the KIK communications which was found saved in PHONE1.

10.      The preliminary forensic exam on PHONE2 revealed that on December 23, 2023, at or around 11:06 pm, and on December 25, 2023, at or around 1:18 pm, GOEGLEIN received CSAM in the known TARA series which he saved on PHONE2 that were also located in cache

5

files in the device. The TARA series images were received when GOEGLEIN was online in a Session[1] Chat Group.

## CONCLUSION

11. THEREFORE, your affiant respectfully requests an arrest warrant for GOEGLEIN based on the complaint and affidavit that provided probable cause that GOEGLEIN has committed the federal crimes of possession of child pornography in violations of 18 U.S.C. § 2252A(5)(B), and 18 U.S.C. § 2251(a) and (e) Exploitation of a child, 18 U.S.C. § 2252A(a)(2) Receipt, and 18 U.S.C. § 2422(b) Online Enticement.

FURTHER AFFIANT SAYETH NOT.

Rollin McGowan
Task Force Officer with HSI
Internet Crimes Against Children

Sworn and subscribed before me on
This the 20th day of February 2026.

HON. JILL E. MCCOOK
UNITED STATES MAGISTRATE JUDGE

---

[1] Session is a high security messaging application designed for extreme privacy and anonymity and unlike most modern messengers it operates without central servers and does not require any personal information to sign up. Per the Session application it "is a private messaging app that protects your metadata, encrypts your communication, and makes sure your messaging activities, leave no digital trail behind.

6

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### KNOXVILLE DIVISION

IN THE MATTER OF:

THE SEARCH OF THE RESIDENCE AND
BUILDINGS LOCATED AT 1795
CHANDLER ROAD, LOUISVILLE, TN
37777; A FORD ESCAPE WITH TN TAG #
BRR 5395; AND THE PERSON OF DAVID
JOHN GOEGLEIN

CASE NO. 3:25-mj-__1332__

## ORDER TO SEAL

Upon motion of the United States of America and for good cause shown,

**IT IS HEREBY ORDERED** that the search warrant, the applications for the search warrant, the affidavit and attachments in support of the application for the search warrant, the government's motion for a non-disclosure order, the non-disclosure order, the government's motion to seal, and the sealing order filed in the above-styled cases shall be sealed and maintained in the custody of the Clerk of the Court for 180 days.

**IT IS SO ORDERED** on this the 2nd day of December 2025.

_____
HON. DEBRA C. POPLIN
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT

for the

Eastern District of Tennessee

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>THE RESIDENCE AND BUILDINGS LOCATED AT 1795 CHANDLER<br>ROAD, LOUISVILLE, TN 37777; A FORD ESCAPE WITH TN TAG # BRR<br>5395; AND THE PERSON OF DAVID JOHN GOEGLEIN, MORE FULLY<br>DESCRIBED IN ATTACHMENTS A-1, A-2, AND A-3. | )<br>)<br>)  Case No.   3:25-MJ- 1332<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the            Eastern            District of            Tennessee
*(identify the person or describe the property to be searched and give its location)*:

THE RESIDENCE AND BUILDINGS LOCATED AT 1795 CHANDLER ROAD, LOUISVILLE, TN 37777; A FORD ESCAPE
WITH TN TAG # BRR 5395; AND THE PERSON OF DAVID JOHN GOEGLEIN, MORE FULLY DESCRIBED IN
ATTACHMENTS A-1, A-2, AND A-3, WHICH ARE ATTACHED HERETO AND FULLY INCORPORATED HEREIN.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property
described above, and that such search will reveal *(identify the person or describe the property to be seized)*:
Please see Attachment B which is attached hereto and fully incorporated herein.

**YOU ARE COMMANDED** to execute this warrant on or before            12/16/2025            *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the
person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the
property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to            Hon. Debra C. Poplin            .
                                                                                                *(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:      12/02/2025  @ 10:06 aM.            _____
                                                                                                *Judge's signature*

City and state:      Knoxville, Tennessee                     Hon. Debra C. Poplin, United States Magistrate Judge
                                                                                                *Printed name and title*

## ATTACHMENT A-1
### DESCRIPTION OF PREMISES TO BE SEARCHED

Premises:

The residence, on the left as you enter the driveway, previously listed as 1795 Chandler Road, Louisville, TN 37777, located in the Eastern District of Tennessee, for any computer/device(s) and computer related media located on the premises.

Physical Description of Premises:

Construction Type: The residence is on the left as you enter the driveway. It is a one-story house that has brown trim around windows. The house has a tan color on the outside. The house is one story with appears to be a white garage on the backside of the house that could be observed, as well as a white in color garage, "Depot" that is located behind the house.

Premises Location:

The residence is located at 1795 Chandler Road, Louisville, TN, 37777

Directions starting at the KPD ICAC Unit 917 East Fifth Ave. Exit ICAC by turning right onto East 5th Ave. Drive about 1000 feet to the intersection of East Fifth Ave and Hall of Fame. Take a right onto Hall of Fame. Take Hall of Fame to I -40 West head west Take US-129 S/Alcoa Hwy to TN-429 West in Alcoa. Follow TN-429 W and Wrights Ferry Rd to Chandler Road.

23



RESIDENCE



"DEPOT"

24

# ATTACHMENT A-2

## DESCRIPTION OF VEHICLE TO BE SEARCHED

A white Ford Escape bearing Tennessee license plate number BRR 5395 registered to DAVID JOHN GOEGLEIN.



25

# ATTACHMENT A-3
## DESCRIPTION OF PERSON TO BE SEARCHED

The person to be searched is DAVID JOHN GOEGLEIN ("TARGET SUBJECT"), date of birth of October 07, 1971, (white male, brown/grey hair, brown eyes) and any property including digital devices on his person including but no limited to any pockets in/on his clothing, and any bags or other containers carried or held by him, provided this person is located within the Eastern District of Tennessee at the time of the search.





26

# ATTACHMENT B

## Below is a list of items to be searched and seized from the premises described in ATTACHMENT A:

1.    Computer(s), computer hardware, software, related documentation, passwords, data security devices (as described below), videotapes, video recording devices, video recording players, monitors and or televisions, flatbed scanners and data where instrumentalities of and will contain evidence related to this crime. The following definitions apply to the terms as set out in this attachment:

(a) Computer Hardware:

Computer hardware consists of all equipment, which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Hardware includes any data-processing devices (including but not limited to central processing units; internal and peripheral storage devices such as thumb drives, CD-ROMs, external hard drives, media cards (SD, Compact Flash, micro SD, memory stick), smart phones, smart televisions, computer game consoles (Sony PlayStation, Xbox), tablets, iPods or iPads, and other memory storage devices); peripheral input/output devices (including but not limited to keyboards, printers, video display monitors, and related communication devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including but not limited to physical keys and locks).

(b) Computer Software:

Computer software is digital information, which can be interpreted by a computer and any of its related components to direct the way they work. Software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

(c) Documentation:

Computer-related documentation consists of written, recorded, printed, or electronically stored material, which explains or illustrates how to configure or use computer hardware, software, or other related items.

27

(d) Passwords and Data Security Devices:

Computer passwords and other data security devices are designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

Case 3:26-cr-00019-TAV-DCP    Document 3    Filed 02/20/26    Page 15 of 53    PageID #: 17

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

# SEARCH WARRANT APPLICATION COVER SHEET

ADMINISTRATIVE USE ONLY – NOT TO BE FILED IN CM/ECF

*To Be Completed By USAO:*

In the Matter Of:

THE SEARCH OF THE RESIDENCE AND
BUILDINGS LOCATED AT 1795 CHANDLER
ROAD, LOUISVILLE, TN 37777; A FORD
ESCAPE WITH TN TAG # BRR 5395; AND THE
PERSON OF DAVID JOHN GOEGLEIN

AUSA Assigned:

Jennifer Kolman

Date Delivered:

12/02/2025

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## KNOXVILLE DIVISION

IN THE MATTER OF:

THE SEARCH OF THE RESIDENCE AND
BUILDINGS LOCATED AT 1795
CHANDLER ROAD, LOUISVILLE, TN
37777; A FORD ESCAPE WITH TN TAG #
BRR 5395; AND THE PERSON OF DAVID
JOHN GOEGLEIN

CASE NO. 3:25-mj-1332

### MOTION TO SEAL

The United States of America, by and through the undersigned Assistant United States Attorney for the Eastern District of Tennessee, hereby moves for an order sealing the search warrant, the application for the search warrant, the affidavit and attachments in support of the application for the search warrant, government's motion to seal, and the sealing order (except for copies to be used by law enforcement personnel during execution of their official duties in the investigation), and to order said items to remain sealed in the custody of the Clerk of the Court until further order of the Court. Sealing of the above-referenced documents is necessary because the ongoing investigation could be compromised if the targets become aware they are under investigation. Further, the safety of the law enforcement personnel involved could be jeopardized if the search warrant documents were to be revealed at this time.

WHEREFORE, the United States respectfully requests that this Court order that the search warrant, the application, the affidavit and attachments in support of the application, this motion to seal, and the sealing order (except for copies to be used by law enforcement personnel during execution of their official duties in the investigation) be **SEALED** for 180 days.

Respectfully submitted,

FRANCIS M. HAMILTON III
UNITED STATES ATTORNEY

By: Jennifer Kolman
Assistant United States Attorney

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

IN THE MATTER OF:

THE SEARCH OF THE RESIDENCE AND
BUILDINGS LOCATED AT 1795
CHANDLER ROAD, LOUISVILLE, TN
37777; A FORD ESCAPE WITH TN TAG #
BRR 5395; AND THE PERSON OF DAVID
JOHN GOEGLEIN

CASE NO. 3:25-mj-1332

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Your affiant, Rollin McGowan, a detective with the Knoxville Police Department (KPD) Internet Crimes against Children (ICAC) Task Force and being a Task Force Officer with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), being duly sworn, deposes and states the following:

1. I have been employed with the KPD since March 22, 2005. Since July 2023, I have been assigned to the KPD-ICAC Task Force as an Internet Crimes Against Children (ICAC) detective. The KPD-ICAC Task Force is responsible for investigating and enforcing federal criminal statutes involving the sexual exploitation of children under Title 18, United States Code, Chapters 109A, 110, and 117.

2. Your affiant has acquired experience in these matters through specialized training and everyday work related to these types of investigations. I have completed the following training:

- 2005 Knoxville Police Department Training Academy Recruit Class
- 2005 State of Tennessee Post Certification
- 2005 City of Knoxville Sexual Harassment Course
- 2005 U.S. Department of Homeland Security Incident Command System

1

- 2006 Knoxville Police Department Instructor Development
- 2011 Colorado Tech University B.S. Criminal Justice
- 2021 Interview and Interrogation school
- 2022 University of Tennessee Sexual Assault Investigations Course
- 2022 Liberty University Master's degree Criminal Justice
- 2023 Sex Offender Registry Training
- 2023 ICAC Investigative Techniques Training
- 2023 Tennessee Bureau of Investigations Human Trafficking Training
- 2023 Office of Justice Programs United States Department of Justice Cyber Tip Overview Training
- 2023 ICAC Program Overview
- 2023 National Law Enforcement Training on Child Exploitation
- 2023 National Criminal Justice Training Center Tracing IP Addresses
- 2023 National Criminal Justice Training Center Collecting and Preserving Evidence
- 2024 National Criminal Justice Training Center Interview Strategies for the ICAC Investigator
- 2024 Homeland Security Investigations Task Force Officer Training
- 2024 National Public Safety Partnership Machinegun Conversion Devices
- 2024 Magnet Forensics Griffeye Analyze Investigator
- 2025 Homeland Security Task Force Officer, ICE Certified
- 2025 National Criminal Justice Training Center Introduction to Proactive Investigations
- 2025 Tennessee Bureau of Investigations Query Recertification
- 2025 Cellebrite Certified Operator CCO
- 2025 Cellebrite Mobile Device Forensic Fundamentals Certification CMFF
- 2025 Undercover Chat certification National Criminal Justice Training Center United States Dept. of Justice

2

3. As a federal task force officer, I am authorized to investigate violations of the laws of the United States and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

**PURPOSE OF AFFIDAVIT**

4. This affidavit is made in support of an application for a warrant to search the residence and buildings of the curtilage located at 1795 Chandler Road, Louisville, TN 37777 (hereinafter "TARGET PREMISES"); a Ford Escape with TN tag # BRR 5395 (hereinafter "TARGET VEHICLE"); and the person of David John GOEGLEIN (hereinafter "TARGET SUSPECT"), as particularly described in **Attachments A-1, A-2, and A-3**, copies of which are attached hereto and incorporated by reference herein.

5. Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that violations of the following have occurred: 18 U.S.C. § 2422(B), Coercion and Enticement; 18 U.S.C. § 2252A(a)(2), Receipt and Distribution of Child Pornography; and 18 U.S.C. § 2252A(a)(5)(b), Possession of Child Pornography; (collectively, hereinafter, the "TARGET OFFENSES").

6. Information contained within the affidavit is based upon information I have gained from my investigation, my personal observations, my training and experience, and/or information related to me by other law enforcement officers and/or agents. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included every fact known to me concerning the investigation. I have set forth only the facts which I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violations of the TARGET OFFENSES further described in **Attachment B**, are presently located at the TARGET PREMISES, TARGET VEHICLE, and TARGET SUSPECT described in **Attachments A-1, A-2, and A-3**.

3

## GLOSSARY OF TERMS APPLICABLE TO THIS AFFIDAVIT

7. INTERNET SERVICE PROVIDER (ISP): A company that provides its customers with access to the Internet, usually over telephone lines or cable connections. Typically, the customer pays a monthly fee, and the ISP supplies software and/or hardware that enables the customer to connect to the Internet by a modem or similar device attached to or installed in a computer.

8. THE INTERNET: The Internet is a worldwide computer network that connects computers and allows communication and the transfer of data and information across county, state, and national boundaries.

9. INTERNET PROTOCOL ADDRESS (IP Address): The unique numeric address of a machine or computer attached to and using the Internet. This address is displayed in four blocks of numbers, e.g., 123.456.789.001. One computer or device can only use each numbered IP address over the Internet at a time.

10. CHATIW.US: Chatiw.us is a free, anonymous chat website that allows users to connect with other CHATIW.US users worldwide for conversations and or dating. Additionally, users can download a mobile version as an application to be used on smartphones and tablets. CHATIW users can also send video and image files through the use of the CHATIW.US application. It does not require registration, though a paid "VIP" membership is available. The site and its mobile app are noted for the simple streamlined interface. The site has been used in the past for attracting users, including minors, for sexting and other sexual interactions.

11. GMAIL: Gmail popular, free, advertising-supported e-mail service provided by Google. Gmail is advertised as a secure webmail client. Gmail offers an initial storage capacity of 15 GB per user with additional storage available for purchase. Individual Gmail messages, including attachments, may be up to 25 MB in size.

4

12. TextNow: is an ad-supported mobile service that provides a free phone number for unlimited calling and texting over Wi-Fi or its network. It Functions as a voice over Internet Protocol (VoIP) service, allowing users to communicate using the internet and offering optional paid data plans and international calling.

13. NATIONAL CENTER FOR MISSING AND EXPLOITED CHILDREN (NCMEC): The National Center for Missing & Exploited Children® opened in 1984 to serve as the nation's clearinghouse on issues related to missing and sexually exploited children. Today NCMEC is authorized by Congress to perform 19 programs and services to assist law enforcement, families and the professionals who serve them.

14. ACCURINT: Accurint is widely used and accepted as a tool to locate and research publicly available records. Accurint is used by government, commercial, and law enforcement agencies to obtain publicly available information and has been utilized numerous times in previous investigations. Clear has proved reliable in each previous investigation.

15. KIK MESSENGER: KIK is a free access anonymous social media application and online platform where users engage in conversations without personal identities or profiles. KIK users can create groups where like-minded users can gather to communicate and share media files and links. Additionally, although KIK is designed to run on mobile devices it can be used on computers using software such as emulators (BlueStacks) and/or screen mirroring applications.

16. GOOGLE: Google is one of the most popular websites/search engines in the world. Google is a web search engine that allows a user to locate other websites on the World Wide Web based on keyword searches. Google also provides specialized searches through blogs, catalogs, photos, videos, news items and more. Google also provides Internet services that let you create blogs, send email, store data and publish web pages. Google has social networking

5

tools, organization tools, and chat tools, as well as services for mobile devices such as smart phone and tablets.

17. ONLINE ENTICEMENT: Online Enticement involves an individual communicating with someone believed to be a child via the internet with the intent to commit a sexual offense or abduction. This is a broad category of online exploitation and includes sextortion in which a child is being groomed to take sexually explicit images and/or ultimately meet face-to-face with someone for sexual purposes, or to engage in a sexual conversation online or, in some instances, to sell/trade the child's sexual images. This type of victimization takes place across every platform, social media, messaging apps, gaming platforms, etc.

## **COMPUTERS AND CHILD PORNOGRAPHY / ONLINE ENTICEMENT**

18. I know that modern computers and communications technology have transformed how predators find, groom, coerce, and exploit minors. The scale of the problem is large and growing thousands to millions of platform reports are processed annually and law-enforcement and nonprofit intake systems are routinely overwhelmed. Technology both amplifies offender reach (cross-jurisdictional contact, multimedia coercion, anonymity) and complicates detection (ephemeral messaging, encrypted channels, AI-generated material). This summary summarizes how technology aids enticement, outlines forensic and evidentiary considerations, and delivers concrete, defensible recommendations for law enforcement to reduce risk, improve detection, and strengthen investigations while protecting children's privacy and civil liberties

19. Based on my knowledge, training, and experience, and the training and experience of other officers, I know that child pornographers commonly download and save some of their collection of child pornography and child enticement grooming images/videos from their computer to removable media such as thumb drives, CD-ROMs, external hard drives,

6

media cards (SD, Compact Flash, micro SD, memory stick), smart phones, smart televisions, computer game consoles (Sony PlayStation, Xbox), tablets, iPods or iPads so the data can be maintained, accessible, and mobile.

20. I know that computers & technology aid predators with mass reach & targeted discovery. Public profiles, interest tags, groups, and location features allow offenders to find and approach numerous potential victims quickly. Anonymity & identity manipulation like Burner accounts, fake profiles, VPNs and privacy features enable offenders to misrepresent age and identity and make tracing harder. Sustained private contact, direct messages, game chat, and private servers support long-term grooming that is invisible to parents or school staff. Multimedia coercion & extortion. Requests for images/videos and the possibility of sharing those materials amplify coercive power and create blackmail opportunities. Ephemeral & encrypted channels. Disappearing messages and end-to-end encryption reduce platform visibility and complicate preservation of evidence. Closed networks & dark web trade invite-only servers and hidden forums that are used to share exploitative material and coordinate activity away from mainstream moderation. Automation & AI. Automated messaging and AI-generated imagery (including synthetic CSAM) increase volume and can swamp detection systems

21. I know that evidence, digital forensics & investigative implications have a direct tie to types of digital evidence commonly relevant in communication records: DMs, group chats, game-chat logs, email headers. Metadata: timestamps, IP logs, account creation data, device identifiers. Media files: images and videos (including metadata and file hashes). Platform records, content reports, takedown notices, moderation logs. Payment/transaction data and gift-card or micro-payment records when extortion is involved.

7

22. Child enticement is recognized as both an offline and online crime, with global scope. Preventive focus has shifted from "stranger danger" to digital literacy, parental engagement, and platform responsibility. Enforcement emphasizes early detection, undercover investigations, mandatory reporting by platforms, and international task forces historically, child enticement was seen mainly as physical abduction. Over time, laws and public understanding expanded to include grooming, psychological manipulation, and online solicitation. Today, child enticement is a recognized global crime problem, with strong legal frameworks and international cooperation aimed at prevention and prosecution.

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

23. Based on my training and experience, I know that the search of computers and retrieval of data from computer systems and related media often requires agents to seize all electronic storage devices (along with related peripherals) to be searched later by a qualified computer expert in a laboratory or other controlled environment. This is true because of the following:

    a) Computer storage devices like thumb drives, CD-ROMs, external hard drives, media cards (SD, Compact Flash, micro-SD, memory stick), smart phones, smart televisions, computer gaming consoles (Sony PlayStation, Xbox), tablets, iPods or iPads can store the equivalent of hundreds of thousands of pages of information. Additionally, a suspect may try to conceal criminal evidence, and he might store criminal evidence in random order with deceptive file names. This may require searching authorities to examine all the stored data to determine which particular files are evidence or instrumentalities of crime. This sorting process can

8

take weeks or months, depending on the volume of data stored, and it would be impractical to attempt this kind of data search on site.

b) Searching computer systems for criminal evidence is a highly technical process, requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to analyze the system and its data. In any event, however, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to inadvertent or intentional modification or destruction (both from external sources and from a destructive code imbedded in the system such as a "booby trap," a controlled environment is essential to its complete and accurate analysis.

24. Based upon my training and experience, and consultation with experts in computer searches, data retrieval from computers, and related media, as well as consultations with other agents who have been involved in the search of computers and retrieval of data from computer systems, I know that searching computerized information for evidence or instrumentalities of crime commonly requires agents to seize all computer system input/output peripheral devices, related software, documentation, and data security devices (including passwords) so that a qualified computer expert can accurately retrieve the systems data in a laboratory or other controlled environment. This is true because of the following:

9

Case 3:26-cr-00019-TAV-DCP    Document 3    Filed 02/20/26    Page 27 of 53    PageID #: 29

a) The peripheral devices, which allow users to enter or retrieve data from the storage devices, vary widely in their compatibility with other hardware and software. Many system storage devices require particular input/output (or "I/O") devices in order to read the data on the system. It is important that the analysts be able to properly re-configure the system as it now operates in order to accurately retrieve the evidence listed above. In addition, the analyst needs the relevant system software (operating systems, interfaces, and hardware drivers) and any applications software, which may have been used to create the data (whether stored on hard drives or on external media), as well as all related instruction manuals or other documentation and data security devices. If the analyst determines that the I/O devices, software, documentation, and/or data security devices are not necessary to retrieve and preserve the data after inspection, the government will return the material in a reasonable time.

b) In order to fully retrieve data from a computer system, the analyst also needs all magnetic storage devices as well as the central processing unit. Further, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software, which may have been used to create the data (whether stored on hard drives or on external media) for proper data retrieval.

c) The Knoxville Police Department's ICAC Task Force currently conducts onsite previews of computers to focus and seize only devices containing contraband. This process assists investigators with only seizing and examining items associated with criminal activity. Based on experience,

10

cooperation from occupants of the residence being searched assist investigators with identifying and seizing only devices that will contain contraband. It is important to note that systems currently powered off will not be powered on to conduct a preview unless investigators believe turning on the device will not alter or destroy possible evidence. Additionally, if devices are password or passcode protected Detectives will advise subjects that they are not required to provide the password or passcode even though the devices can be searched and seized according to the search warrant. However, detectives will ask for passwords/passcodes to devices as part of the interview process.

25. Based on my knowledge, training, and experience, and the training and experience of other officers, I know that child pornographers commonly download and save some of their collection of child pornography from their computer to removable media such as thumb drives, CD-ROMs, external hard drives, media cards (SD, Compact Flash, micro SD, memory stick), smart phones, computer game consoles (Sony PlayStation, Xbox), tablets, iPods, or iPads so the images can be maintained in a manner that is both mobile and easily accessible to the collector. Thumb drives, CD-ROMs, external hard drives, media cards (SD, Compact Flash, micro SD, memory stick), smart phones, computer game consoles (Sony PlayStation, Xbox), tablets, iPod's, or iPads, containing child pornography and printed pictures of child pornography are not only kept near the computer, but also in hidden areas known to the child pornographer, to keep other individuals from discovering the illegal material. For example, a search warrant executed by other officers known to your affiant resulted in the finding of a hard drive wrapped in plastic hidden under a bathroom sink. Additionally, in 2014, in my experience, I assisted investigators with the KPD ICAC Task Force with the arrest of a subject for the interstate travel

11

to meet a minor for sexual purposes (18 U.S.C. § 2423(a)). An external hard drive was located in the trunk of the suspect's vehicle. A search warrant on the external hard drive revealed a contact offense by the subject on a four-year-old girl and numerous pornographic videos of the sexual abuse produced by the subject using his smartphone.

26. In addition, there is probable cause to believe that the computer and its storage devices, the monitor, keyboard, and modem are all instrumentalities of the crime of advertising, distribution, receipt, and/or possession of child pornography in violation of the law and should all be seized as such.

27. Based on my training and experience in computer searches and data retrieval from computers while in a laboratory setting, I am aware that such searches can be complex and time consuming.

**INVESTIGATION**

28. On or About August 12, 2025, I received Homeland Security Investigations (HSI) case # K107QR25K1001 involving an undercover chat operation by HSI Special Agent (SA) B. Thorn of Harrisonburg, VA, as well as an undercover chat operation conducted by Investigator Michael K. Evans of the Okaloosa County, FL Sheriff's Office (OCSO). These cases were referred to HSI Special Agent Gregg Martin and me due to the actions of the suspect residing in the Eastern District of Tennessee.

29. In October 2024, HSI in Harrisonburg, VA conducted an undercover (UC) operation from within the Western District of Virginia focusing on individuals interested in child sexual abuse material (CSAM). During this operation, TARGET SUSPECT contacted UC agent (identified as a 15-year-old minor) and solicited illicit sex acts. TARGET SUSPECT established plans to travel from Tennessee to Virginia to meet with the UC to engage in the illicit sexual acts. Additionally, TARGET SUSPECT planned to return to Tennessee with the UC in his

12

possession for a long-term relationship. TARGET SUSPECT provided information to UC that he has committed illicit sexual acts with other minors in the past.

30. HSI SA Thorn used the website "chatiw.us" to conduct an authorized online undercover investigation. The site allows users to communicate on a 1-on-1 basis without the requirement of an email address or traditional account registration. Users can create/use any screenname, age, and location without verification by the site/application. HSI SA Thorn has used this platform (website and application) in prior child exploitation investigations and there is a large volume of users that have an interest in pedophilia.

31. In this investigation, HSI SA Thorn used the screenname **"mckennava28"** with a location of Virginia and remained idle, waiting to be contacted. Due to the website requirement of users being over the age of 18, HSI SA Thorn listed the UC's age as 18. HSI SA Thorn was contacted by the user **"OPenpedoPurv"**, later identified as David John GOEGLEIN, who's account showed at the time of contact being active for 2,657 days. The conversation between **OPenpedoPury** and the UC is as follows:

| | |
|---|---|
| oPenpedoPurv: | hhhiiiii |
| oPenpedoPurv: | where in VA? |
| UC: | Hi |
| UC: | near JMUJ |
| UC: | JMU |
| oPenpedoPurv: | ok. Knoxville. Older guy ok? |
| UC: | yea u cool w/ me being younger |
| UC: | im 15 |
| oPenpedoPurv: | I am |
| oPenpedoPurv: | have you dated older yet? |
| UC: | Cool |
| UC: | you got a K I K |
| oPenpedoPurv: | yes; erosalctn |

13

32. The communication was in two parts. If the website is not stable and if users refresh their browsers the existing conversations are deleted. UC requested the user's KIK identifier and communication moved to KIK on the same date. UC messaged TARGET SUSPECT who has the username of **"erosalctn"** and display name of "Kevin Eros". Immediately the conversation took a sexually based narrative. TARGET SUSPECT ascertained if UC was interested in a dominant/submissive relationship.

33. TARGET SUSPECT indicated that if the UC were to move in with him, he would have the UC be his slave, and he would please and take care of his slave. TARGET SUSPECT advised he would hold the UC down and "force orgasms." UC asked TARGET SUSPECT "how would you make this happen I mean I'm 15 I can't even drive." He replied, "If you really wanted to do this I could come and pick you up." TARGET SUSPECT then proceeded to ask if the UC has "Much pussy hair?" and "what's your tit size?" UC responded, "A cup and not much hair." TARGET SUSPECT responded "I love small tits. And as it grows in, I want you to keep a landing strip for me as far as pussy hair."

34. TARGET SUSPECT explained his sexual plans stating, "You will be kissed, hug, cuddled, care for, loved. You will be held or tied down and made to cum many times a day. I love the ought of holding you down having your legs spread rubbing and rubbing that clit and make a roll five or six orgasms right into each other back-to-back."

35. UC ascertained from TARGET SUSPECT if he had any experience with anyone the UC's age (15 years old) and he advised he did have sexual experience with a 15-year-old last summer.

36. On October 31, 2024, TARGET SUSPECT communicated to the UC about home schooling and if it was feasible to complete from his residence. TARGET SUSPECT explained his "rules" to the UC about complete submission and his assertion of sexual dominance over the

14

UC.  TARGET SUSPECT informed UC about not being allowed to cuss.  UC commented to TARGET SUSPECT "you gonna make me into a woman lol girls my age love to cuss."  He replied, "I certainly am not going to treat you like a little girl, I will have to keep your mouth occupied."  TARGET SUSPECT sent several pictures of himself to HSI SA Thorn which depicts a middle-aged white male with a goatee.

37.     On November 6, 2024, TARGET SUSPECT asked, "Will there be any time better than the other to come get you?"  UC advised him that UC would be Charlottesville the following week to house sit for a family member.  TARGET SUSPECT subsequently agreed this would be a good time to come get and take the UC away.  He made plans to travel either on November 13, 2024, or November 14, 2024.

38.     On November 13, 2024, TARGET SUSPECT sent the VA UC a picture of what he calls his "Depot" which is in the back of residence located at TARGET PREMISES.



15

39.     On October 23, 2024, after receiving contact from TARGET SUSPECT on KIK, an administrative subpoena was issued to KIK for the username "erosalctn".

40.     On October 30, 2024, KIK responded, providing the display name of "Kevin Eros," and an email of erostenn@yahoo.com. KIK additionally provided a list of Internet Protocol (IP) addresses for the KIK account in question. Most of the IPS were routed through VPN (virtual private network, which is a service that encrypts a user's data and masks their IP address to protect their privacy online). Most of the IPs indicated connections that were outside of the United States, with the exceptions of 24 connections to IP address 97.95.131.231. The IP address 97.95.131.231 was determined to belong to Chart Communications in Sevierville, TN.

41.     On October 30, 2024, an administrative subpoena was submitted to Charter Communications for the IP address 97.95.131.231. On November 6, 2024, Charter Communications responded that the IP Address 97.95.131.231 was registered to David John GOEGLEIN of 1795 Chandler Road, Louisville, TN 37777. Investigation through law enforcement databases located a David John GEOGLEIN at the same address with the date of birth (DOB) of 10/7/1971. Additional investigations ran through Tennessee Division of Motor Vehicles and photo ID matches that of pictures sent by "erosalctn" to the UC.

42.     TARGET SUSPECT told the VA UC in the chat he had a Ford Escape. A search of the State of Tennessee Integrated Criminal Justice Portal database confirmed a vehicle matching that description registered to TARGET SUSPECT as a White 2022 Ford Escape Tag number BRR5395 (TARGET VEHICLE), with a residence registration of 1795 Chandler Road, Louisville, TN, 37777 (TARGET PREMISES).

43.     On September 23, 2025, HSI SA Greg Martin observed a white Ford Escape, TN Tag BRR539 which is registered to David GOEGLEIN (TARGET SUSPECT) at the property located at 1795 Chandler Road Louisville, TN, 37777 (TARGET PREMISES). This vehicle

16

matches what the TARGET SUSPECT told the VA UC he drove. The vehicle can be seen in the background of a picture found in the search warrant of TARGET SUSPECT's Google downloads, as well as a Flock camera picture taken of his vehicle on November 18, 2025, at 13:35 pm.



44.     Additionally, on or about August 12, 2025, I received an additional HSI case # K107QR25K1001 involving an UC chat operation that was conducted by Investigator Michael K. Evans of the Okaloosa County Sheriff's Office, (OCSO) in Okaloosa County Florida. This UC chat also involved the TARGET SUSPECT.

45.     On October 26, 2024, an individual identified by the username "KinkyOpePdoPurv" on the social media application "Chatiw.US" contacted an OCSO UC deputy posing as a father of two daughters whom he was sexually abusing. The conversation moved from Chatiw.US to the application, TextNow. TARGET SUSPECT was using the phone number of 865-344-0032. During the conversation TARGET SUSPECT solicited the UC deputy to have a sexual encounter with a ten-year-old child which TARGET SUSPECT thought was the daughter of the UC.

17

46. On December 17, 2024, a search warrant was obtained from the First Judicial Circuit Court of Okaloosa County, Florida for the data information from TextNow. Relevant information recovered included subscriber information in the name of **kevin.klinetn,** and an email address of kevin.kleintn@gmail.com.

47. On April 16, 2025, a search warrant was obtained from the First Judicial Circuit Court of Okaloosa County, Florida for the google account of kevin.klinetn@gmail.com. On April 22, 2025, Google returned information pertaining to the Gmail subscriber kevin.klinetn@gmail.com and included activity IP address of log on activity of 2600:6c5d:5a00:4dd:c543:67:853b:9ef0. Also included in the Google search warrant were photos affiliated with the account that were visually identified as TARGET SUSPECT.

 

48. Upon reviewing the Google search warrant return, I discovered interior photos of the TARGET SUSPECT's home (TARGET PREMISES). The images of the TARGET PREMISES were the same as the images with those TARGET SUSPECT had shared during his chat with the Virginia detective.

18




49.     In the chat between TARGET SUSPECT and the VA UC, TARGET SUSPECT sent a picture of himself in a mirror inside his home located at TARGET PREMISES on November 4, 2025, at 3:32 pm.



50.     The IP address was identified as belonging to Charter Communications. A subpoena for the IP address 2600:6c5d:5a00:4dd:c543:67:853b:9ef0 was sent to Charter Communications, and they responded that the subscriber was TARGET SUSPECT with service address of TARGET PREMISES.

51.     On or about August 12, 2025, I received and reviewed the collective data from both investigations. A forensic analysis by KPD-ICAC unit uncovered three additional chat communications involving kevin.klinetn@gmail.com. The Google communications return of interest were with ameliajames1247@gmail.com, Tinahighly@gmail.com, and

20

Liama00116@gmail.com. The Gmail account of ameliajames@gmail.com sent an image of child sex abuse material to kevin.klinetn@gmail.com via google chat. The chat conversations with Tinahighly@gmail.com, and Liama00116@gmail.com also included nude images of what appears to be minor females that were sexual in nature.

52. On October 22, 2025, a second administrative subpoena was issued to Charter Communications on the IPV6 2600:6c5d:5a00:4dd:c543:67:853b:9ef0 that was used in the UC chat in Florida. The return showed the subscriber's name as TARGET SUSPECT and address of TARGET PREMISES as currently using the IP address. Also, on November 4, 2025, I submitted a second administrative subpoena to Charter Communications for the IP4 97.95.131.231 used in the UC chat from Virginia. It also returned the same subscriber's name and address of TARGET SUSPECT at TARGET PREMISES being currently used.

<u>CONCLUSION</u>

53. Based on the foregoing, there is probable cause to believe that computer and/or electronic devices with the residential IP 97.95.131.231 located at 1795 Chandler Road, Louisville, TN, 37777 has been used in conjunction with violations Title 18, United States Code, Sections 2422(B), 2252A(a)(2), and 2252A(a)(5)(b).

54. Further, there is probable cause to believe that evidence, fruits, and instrumentalities of this crime, which are listed specifically in **Attachment B**, which is incorporated herein by reference, are presently located on the premises described in **Attachment A-1,** the vehicle described in **Attachment A-2,** and the person described in **Attachment A-3.** Rule 41 of the Federal Rules of Criminal Procedure authorizes the government to seize and retain evidence and instrumentalities of a crime for a reasonable time and to examine, analyze and test them.

21

55. The evidence, fruits, and instrumentalities of violation of Title 18, United States Code, Sections 2422(B), 2252A(a)(2), and 2252A(a)(5)(b), believed to be concealed at the premises described in **Attachment A-1**, vehicle described in **Attachment A-2**, and on person described in **Attachment A-3**, are listed in **Attachment B** of this affidavit, which is incorporated herein.

56. Therefore, your affiant respectfully requests issuance of a search warrant authorizing the search and seizure of the items listed in **Attachment B**.

Rollin McGowan
Detective / Homeland Security TFO
Knoxville Police Department
Internet Crimes Against Children Task Force


Sworn and subscribed before me on this the 2nd day of December 2025.

HON. DEBRA C. POPLIN
UNITED STATES MAGISTRATE JUDGE

22

**ATTACHMENT A-1**

**<u>DESCRIPTION OF PREMISES TO BE SEARCHED</u>**

<u>Premises:</u>

The residence, on the left as you enter the driveway, previously listed as 1795 Chandler Road, Louisville, TN 37777, located in the Eastern District of Tennessee, for any computer/device(s) and computer related media located on the premises.

<u>Physical Description of Premises:</u>

Construction Type: The residence is on the left as you enter the driveway. It is a one-story house that has brown trim around windows. The house has a tan color on the outside. The house is one story with appears to be a white garage on the backside of the house that could be observed, as well as a white in color garage, "Depot" that is located behind the house.

<u>Premises Location:</u>

The residence is located at 1795 Chandler Road, Louisville, TN, 37777

Directions starting at the KPD ICAC Unit 917 East Fifth Ave. Exit ICAC by turning right onto East 5th Ave. Drive about 1000 feet to the intersection of East Fifth Ave and Hall of Fame. Take a right onto Hall of Fame. Take Hall of Fame to I-40 West head west Take US-129 S/Alcoa Hwy to TN-429 West in Alcoa. Follow TN-429 W and Wrights Ferry Rd to Chandler Road.

23



RESIDENCE



"DEPOT"

24

## ATTACHMENT A-2
### DESCRIPTION OF VEHICLE TO BE SEARCHED

A white Ford Escape bearing Tennessee license plate number BRR 5395 registered to DAVID JOHN GOEGLEIN.



25

## ATTACHMENT A-3
## DESCRIPTION OF PERSON TO BE SEARCHED

The person to be searched is DAVID JOHN GOEGLEIN ("TARGET SUBJECT"), date of birth of October 07, 1971, (white male, brown/grey hair, brown eyes) and any property including digital devices on his person including but no limited to any pockets in/on his clothing, and any bags or other containers carried or held by him, provided this person is located within the Eastern District of Tennessee at the time of the search.





26

# ATTACHMENT B

## Below is a list of items to be searched and seized from the premises described in ATTACHMENT A:

1. Computer(s), computer hardware, software, related documentation, passwords, data security devices (as described below), videotapes, video recording devices, video recording players, monitors and or televisions, flatbed scanners and data where instrumentalities of and will contain evidence related to this crime. The following definitions apply to the terms as set out in this attachment:

(a) Computer Hardware:

Computer hardware consists of all equipment, which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Hardware includes any data-processing devices (including but not limited to central processing units; internal and peripheral storage devices such as thumb drives, CD-ROMs, external hard drives, media cards (SD, Compact Flash, micro SD, memory stick), smart phones, smart televisions, computer game consoles (Sony PlayStation, Xbox), tablets, iPods or iPads, and other memory storage devices); peripheral input/output devices (including but not limited to keyboards, printers, video display monitors, and related communication devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including but not limited to physical keys and locks).

(b) Computer Software:

Computer software is digital information, which can be interpreted by a computer and any of its related components to direct the way they work. Software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

(c) Documentation:

Computer-related documentation consists of written, recorded, printed, or electronically stored material, which explains or illustrates how to configure or use computer hardware, software, or other related items.

27

(d) <u>Passwords and Data Security Devices</u>:

Computer passwords and other data security devices are designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

28

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Tennessee

| In the Matter of the Search of | )
*(Briefly describe the property to be searched*<br>*or identify the person by name and address)* | )

THE RESIDENCE AND BUILDINGS LOCATED AT 1795 CHANDLER ROAD, LOUISVILLE, TN 37777; A FORD ESCAPE WITH TN TAG # BRR 5395; AND THE PERSON OF DAVID JOHN GOEGLEIN MORE FULLY DESCRIBED IN ATTACHMENTS A-1, A-2, AND A-3.

Case No. 3:25-MJ-1332

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachments A-1, A-2, and A-3 attached hereto and incorporated herein.

located in the _____ Eastern _____ District of _____ Tennessee _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B attached hereto and incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2422(b) | Coercion and enticement |
| 18 U.S.C. § 225A(a)(2) | Receipt and distribution of child pornography |
| 18 U.S.C. § 225A(a)(5)(B) | Possession of child pornography |

The application is based on these facts:

Please see the affidavit of HSI Task Force Officer Rollin McGowan, which is attached hereto and incorporated herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Rollin McGowan, HSI Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 12/02/2025 _____

_____
*Judge's signature*

City and state: Knoxville, Tennessee

Hon. Debra C. Poplin, United States Magistrate Judge
*Printed name and title*

# ATTACHMENT A-1
## DESCRIPTION OF PREMISES TO BE SEARCHED

Premises:

The residence, on the left as you enter the driveway, previously listed as 1795 Chandler Road, Louisville, TN 37777, located in the Eastern District of Tennessee, for any computer/device(s) and computer related media located on the premises.

Physical Description of Premises:

Construction Type: The residence is on the left as you enter the driveway. It is a one-story house that has brown trim around windows. The house has a tan color on the outside. The house is one story with appears to be a white garage on the backside of the house that could be observed, as well as a white in color garage, "Depot" that is located behind the house.

Premises Location:

The residence is located at 1795 Chandler Road, Louisville, TN, 37777

Directions starting at the KPD ICAC Unit 917 East Fifth Ave. Exit ICAC by turning right onto East 5th Ave. Drive about 1000 feet to the intersection of East Fifth Ave and Hall of Fame. Take a right onto Hall of Fame. Take Hall of Fame to I -40 West head west Take US-129 S/Alcoa Hwy to TN-429 West in Alcoa. Follow TN-429 W and Wrights Ferry Rd to Chandler Road.

23



RESIDENCE



"DEPOT"

24

## ATTACHMENT A-2
### <u>DESCRIPTION OF VEHICLE TO BE SEARCHED</u>

A white Ford Escape bearing Tennessee license plate number BRR 5395 registered to DAVID JOHN GOEGLEIN.



25

# ATTACHMENT A-3

## DESCRIPTION OF PERSON TO BE SEARCHED

The person to be searched is DAVID JOHN GOEGLEIN ("TARGET SUBJECT"), date of birth of October 07, 1971, (white male, brown/grey hair, brown eyes) and any property including digital devices on his person including but not limited to any pockets in/on his clothing, and any bags or other containers carried or held by him, provided this person is located within the Eastern District of Tennessee at the time of the search.





26

**ATTACHMENT B**

**Below is a list of items to be searched and seized from the premises described in ATTACHMENT A:**

1.      Computer(s), computer hardware, software, related documentation, passwords, data security devices (as described below), videotapes, video recording devices, video recording players, monitors and or televisions, flatbed scanners and data where instrumentalities of and will contain evidence related to this crime.  The following definitions apply to the terms as set out in this attachment:

(a) Computer Hardware:

Computer hardware consists of all equipment, which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data.  Hardware includes any data-processing devices (including but not limited to central processing units; internal and peripheral storage devices such as thumb drives, CD-ROMs, external hard drives, media cards (SD, Compact Flash, micro SD, memory stick), smart phones, smart televisions, computer game consoles (Sony PlayStation, Xbox), tablets, iPods or iPads, and other memory storage devices); peripheral input/output devices (including but not limited to keyboards, printers, video display monitors, and related communication devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including but not limited to physical keys and locks).

(b) Computer Software:

Computer software is digital information, which can be interpreted by a computer and any of its related components to direct the way they work.  Software is stored in electronic, magnetic, or other digital form.  It commonly includes programs to run operating systems, applications, and utilities.

(c) Documentation:

Computer-related documentation consists of written, recorded, printed, or electronically stored material, which explains or illustrates how to configure or use computer hardware, software, or other related items.

27

(d) <u>Passwords and Data Security Devices</u>:

Computer passwords and other data security devices are designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

28