UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:26-CR-19-TAV-DCP |
| | ) | |
| DAVID JOHN GOEGLEIN, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>**MEMORANDUM OPINION AND ORDER**</u>

This criminal case is before the Court on defendant's Appeal to the District Court to Reconsider Magistrate Judge's Order of Detention Pending Trial [Doc. 20]. Defendant moves the Court to reconsider the Order of Detention entered by United States Magistrate Judge Debra C. Poplin on March 6, 2026 [*Id.* at 1; *see* Docs. 17, 17-1]. The government filed a response in opposition [Doc. 26]. For the reasons discussed below, defendant's appeal [Doc. 20] is **DENIED**.

## I. Background

Defendant is charged with six counts of attempted enticement, in violation of 18 U.S.C. § 2422(b) (Counts One, Two, Five, Six, Eight, and Nine), two counts of sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a) and (e) (Counts Three and Seven), one count of transfer of obscene material to a child, in violation of 18 U.S.C. § 1470 (Count Four), and one count of possession of child pornography with intent to view, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count Ten) [Doc. 12]. On February 26, 2026,

the parties appeared before Judge Poplin for a detention hearing, and after hearing proof and arguments, she took the matter under advisement [Doc. 10].

After weighing the factors set forth in 18 U.S.C. § 3142(g), Judge Poplin found "by clear and convincing evidence that [d]efendant poses a risk of danger to the community[,]" and that "neither the proposed conditions, nor any condition or combination of conditions will reasonably assure the safety of the community" [Doc. 17, p. 3; Doc. 17-1, p. 5]. In particular, Judge Poplin concluded that defendant poses a danger to the community based on the nature and circumstances of the charged offenses, the weight of evidence of defendant's dangerousness, and the seriousness of danger to the community that would be posed by defendant's release [Doc. 17-1, pp. 2–4]. And while defendant proposed to be placed with his mother as a third-party custodian upon release, Judge Poplin noted the extreme difficulty in monitoring crimes against children given the "prevalence of internet in society" [*Id.* at 5]. To this point, Judge Poplin further cited that defendant "set up his parents' internet service, worked remotely for several companies including a technology company, and used a number of accounts on several platforms created with various email accounts" [*Id.*]. Ultimately, Judge Poplin ordered that defendant be detained pending trial [*Id.*].

On April 24, 2026, defendant filed the instant appeal, requesting that he be released on bond or, in the alternative, that he be given a hearing on this matter [Doc. 20, p. 1]. In support of his appeal, defendant contends that Judge Poplin placed too much weight on the nature and circumstances of the offense and the weight of evidence against defendant [*Id.*

at 2]. Defendant additionally submits that Judge Poplin did not expand on how the weight of evidence of dangerousness applies to his particular case.

Next, defendant argues that Judge Poplin placed too little weight on his history and characteristics, emphasizing that he has no criminal record, and he has no history of failing to appear [*Id.* at 3]. Further, defendant states that he is a long-time resident of Eastern Tennessee with extensive familial support, evidence by his mother's willingness to act as a third-party custodian [*Id.*]. Additionally, defendant notes that, were he to be released from custody, he would reside in a home outside of any Tennessee Department of Correction ("TDOC") restricted zone and with password protected internet access [*Id.*]. Finally, as to the nature and seriousness of danger to the community, defendant asserts that Judge Poplin reached her conclusion as to the suitability of defendant's proposed conditions of release and defendant's likely adherence to said conditions "with no grounds to doubt [defendant's] good faith intentions or any evidence that he has attempted or would attempt to circumvent any conditions imposed by the Court." [*Id.* at 3–4].

Ultimately, defendant submits that the conditions and restrictions he proposed, i.e., "a third-party custodian, electronic monitoring, mental health treatment, no internet access, and a residence outside of TDOC restricted zones[,]" would reasonably assure his appearance and the safety of the community [*Id.* at 4]. Defendant further provides that he would be amenable to any conditions the Court were to impose on him [*Id.*].

On May 20, 2026, the government responded in opposition [Doc. 26], arguing that Judge Poplin's Order of Detention [Doc. 17] should be adopted by the Court. The

government first asserts that defendant adds nothing new to the evidence presented at the detention hearing, and that he merely makes conclusory arguments in his instant appeal [Doc. 26, p. 1]. Turning then to its position, the government begins by emphasizing the number of minor victims at issue in this case and the disturbing content of defendant's communications [*Id.* at 1–2]. Additionally, the government provides that a search warrant executed on defendant revealed a "sex room" in defendant's home and over 200 images and videos of child pornography on defendant's electronic devices [*Id.* at 2].

As for defendant's reliance on his history and characteristics in support of his release, the government submits that all of what defendant relies upon was "present when he was committing his crimes against children" [*Id.*]. Moreover, defendant's history and characteristics "track most likeminded child sex offender defendants" in having no criminal history and having stable employment [*Id.*]. Finally, the government asserts that defendant "is hoping that this Court will: (1) [b]elieve he has good faith intentions to comply with the conditions of release he has presented . . . ; and (2) [i]gnore the facts of the ubiquitous presence of the internet coupled with [d]efendant's inability to show how his offered conditions of release guarantee protection for society's children" [*Id.* at 2–3]. At bottom, the government asserts that a plethora of evidence exists here to show that defendant is a danger to the communities' children, and therefore, Judge Poplin's Order should be adopted [*Id.* at 3].

4

## II.  Standard of Review

"If a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order."  18 U.S.C. § 3145(b).  A district court reviews *de novo* a magistrate judge's order of pretrial detention.  *United States v. Blair*, No. 3:15-CR-56, 2015 WL 3486026, at *1 (E.D. Tenn. June 2, 2015) (citations omitted); *see also United States v. Marcrum*, 953 F. Supp. 2d 877, 880 (W.D. Tenn. 2013), *aff'd*, No. 13-6008 (6th Cir. Nov. 1, 2013).  A second hearing is not required on a § 3145(b) motion, particularly where "the material information is already in the record from the initial detention hearing."  *See United States v. Walden*, No. 3:24-CR-19, 2024 WL 2121232, at *1 (E.D. Tenn. May 10, 2024) (citation omitted).  Given defendant relies on the arguments and proof presented at the detention hearing, the Court does not find it necessary to hold a second hearing.[1]

## III.  Applicable Law

As relevant here, section 18 U.S.C. § 3142(e)(3)(E) provides that:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . an offense involving a minor victim under section . . . 2242[ or] 2251 . . . of this title.

---

[1]  Additionally, though defendant requests a second hearing as alternative relief in his appeal [Doc. 20, p. 1], he lends no support for why a second hearing would be warranted. Accordingly, to the extent defendant requests a new hearing, such request is **DENIED**.

5

"This presumption leaves a defendant with the burden to produce evidence that they do not pose a danger to the community or a risk of flight." *United States v. Hughes*, 668 F. Supp. 3d 744, 747 (S.D. Ohio 2023) (citing *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010)). Even if a defendant satisfies his burden to produce, which is not heavy, the presumption favoring detention still remains a factor to be considered among those weighed by the court. *Stone*, 608 F.3d at 945.

When reviewing a magistrate judge's detention order, the Court relies on the four factors set out in 18 U.S.C. § 3142(g):

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). "If, after a hearing[,] . . . the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as

6

required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e). "The government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or the community by clear and convincing evidence." *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004) (citation omitted).

## IV. Analysis

### A. Timeliness of Appeal

Foremost, the Court addresses the timeliness of defendant's appeal [Doc. 20]. Local Rule 72.4(b) provides in relevant part that "[a]ny appeal from a magistrate judge's order on a nondispositive motion in a felony criminal case shall be taken within 14 days of service of the order." E.D. Tenn. L.R. 72.4(b); *accord United States v. Alhallaq*, No. 5:25-CR-309, 2026 WL 177624, at *2 (N.D. Ohio Jan. 21, 2026) (citation omitted) ("A defendant's right to have the court with original jurisdiction review a detention order is waived if the appeal is not taken within fourteen days as dictated by Fed. R. Crim. P. 59(a)."); *United States v. Lee*, No. 3:25-CR-18, 2026 WL 540119, at *2 (E.D. Tenn. Feb. 26, 2026) (denying the defendant's appeal of the magistrate judge's detention order as untimely under Local Rule 72.4 because it was filed 10 months after the detention order was issued). Judge Poplin issued the Order of Detention here on March 6, 2026 [Doc. 17]. Defendant's appeal, however, was not filed until April 24, 2026, well beyond the 14-day appeal period [Doc. 20]. Thus, it appears that defendant's time to seek review of the detention order has passed. Nevertheless, in its discretion, the Court will briefly review defendant's instant appeal.

7

## B.    Rebuttable Presumption

The Court begins with the rebuttable presumption in favor of detention.  *See* 18 U.S.C. § 3142(e)(3).  Given defendant's indictment, probable cause exists to conclude that defendant violated 18 U.S.C. §§ 2422(b), 2251(a) and (e), 1470, and 2252A(a)(5)(B) [*See* Doc. 12].  *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985) (finding that an indictment "is sufficient to establish probable cause" for purposes of the rebuttable presumption); *Stone*, 608 F.3d at 945.  And as set forth above, offenses involving a minor victim under 18 U.S.C. §§ 2422 or 2251 carry a rebuttable presumption of detention.  *See* 18 U.S.C. § 3142(e)(3)(E).  Therefore, Counts One, Two, Three, Five, Six, Seven, Eight, and Nine against defendant leaves him facing the presumption of detention.  *Id.* Accordingly, defendant bears the burden to produce evidence showing he is not a risk of flight nor a danger to the community.

After review, the Court finds no reason to disagree with the Magistrate Judge's assessment that defendant "minimally rebutted the presumption in § 3142(e)(3)" [*See* Doc. 17-1, p. 1].  And it does not appear that the parties dispute this finding.  Thus, the Court turns to the § 3142(g) factors to determine if defendant should be released, keeping in mind that the presumption remains a consideration.  *See Stone*, 608 F.3d at 945.

## C.    Section 3142(g) Factors

### 1.    Nature and Circumstances of the Offense Charged

8

The nature and circumstances of the offenses charged favor detention. Notably, all of the offenses defendant has been charged with carry penalties of potentially long periods of imprisonment, reflecting the seriousness of the crimes. *See* 18 U.S.C. § 2422(b) (providing a penalty of a term of imprisonment of "not less than 10 years or for life"); 18 U.S.C. § 2251(a), (e) (providing a penalty of a term of imprisonment "not less than 15 years nor more than 30 years"); 18 U.S.C. § 1470 (providing a penalty of a term of imprisonment of up to 10 years); 18 U.S.C. § 2252A(a)(5)(B), (b)(2) (providing a penalty of a term of imprisonment of up to 10 years); *see also United States v. Mehmed*, 748 F. Supp. 3d 549, 552 (S.D. Ohio 2024) (internal quotation marks omitted) (stating that the lengthy terms of imprisonment conveyed for the offenses of (1) coercion and enticement and (2) travel with intent to engaged in a sexual act with a minor "reflect a Congressional determination that individuals who sexually exploit minors are inherently dangerous." (quoting *United States v. Fitzhugh*, No. 16-mj-30364, 2016 WL 4727480, at *4 (E.D. Mich. Sept. 12, 2016))); *United States v. Dixson*, No. 20-1998, 2021 WL 1502723, at *1 (6th Cir. Mar. 22, 2021) (upholding detention of the defendant and agreeing with the district court that a 10-year term of incarceration "reflected the seriousness of the crime and 'increase[d] the likelihood of flight'").

Furthermore, the Sixth Circuit has stated repeatedly that offenses involving the enticement or exploitation of minors, even if just attempted, are serious and dangerous crimes. *See United States v. Dobrowolski*, 406 F. App'x 11, 13 (6th Cir. 2010) (stating that the "attempted sexual enticement of a minor is a very serious crimes, regardless of whether

9

there is an actual minor who is victimized"); *United States v. LaFond*, 692 F. App'x 242, 246–47 (6th Cir. 2017) (collecting cases) ("The Supreme Court, this Court, and other courts have discussed in depth on many occasions the seriousness of crimes involving the sexual abuse of children and the extent of harm caused by those crimes."); *United States v. Hoilman*, No. 22-6108, 2023 WL 4074630, at *2 (6th Cir. Apr. 24, 2023) (citations omitted) (noting that the Sixth Circuit has previously recognized that the receipt, distribution, and possession of child pornography are crimes which are tremendously dangerous to the community).

Moreover, crimes involving minor victims are a specific consideration under 18 U.S.C. § 3142(g)(1). The Court would also note, as other courts have in this Circuit, that all except one of defendant's charged offenses constitutes a crime of violence under the Bail Reform Act ("BRA"), 18 U.S.C. § 3141, *et seq*. *See* 18 U.S.C. § 3142(g)(1) (asking courts to weigh "the nature and circumstances of the offense charged, including whether the offense is a crime of violence"); *Id.* § 3156(a)(4) (defining "crime of violence" as used in the BRA to include "any felony under chapter . . . 110[] or 117"); *Id.* § 2251 (falling under chapter 110); *Id.* § 2252A (falling under chapter 110); *Id.* § 2422 (falling under chapter 117); *see also United States v. Tackett*, No. 5:25-CR-29, 2025 WL 1105312, at *3 (E.D. Ky. Apr. 8, 2025) (providing that the defendant's alleged crimes "involve minors and are consequently crimes of violence"); *United States v. Pece*, No. 1:20-CR-186-1, 2020 WL 6263640, at *5 (N.D. Ohio Oct. 23, 2020).

10

The Court now turns to the circumstances of this case,[2] as outlined in detail in the affidavit supporting the Criminal Complaint [Doc. 3, pp. 2–7] and the affidavit in support of a search warrant [*Id.* at 19–40]. According to these affidavits, defendant was the subject of at least two investigations by the Department of Homeland Security [*Id.* at 2–7, 30–39].

Foremost, in October of 2024, Homeland Security Investigations ("HSI") in Harrisonburg, Virginia, conducted an undercover operation "focusing on individuals interested in child sexual abuse material" ("CSAM") [*Id.* at 30]. During this operation, defendant contacted the undercover officer ("UC"), who was posing as a 15-year-old minor [*Id.*]. In the course of the conversation between defendant and the UC, defendant "established plans to travel from Tennessee to Virginia to meet with the UC to engage in illicit sexual acts" and "planned to return to Tennessee with the UC in his possession for a long-term relationship" [*Id.* at 30–31, 33]. In accordance with these plans, defendant indicated that, were the UC to move in with him, "he would have the UC be his slave, and he would please and take care of his slave" [*Id.* at 32–33]. Defendant also explained his "rules" to the UC as to how their sexual relationship was to function and sent the UC a picture of what he called his "Depot" at the back of his residence [*Id.*]. Defendant also asked the UC about genitalia during their online conversation and discussed in detail the

---

[2] The Court notes that "[n]othing in [§ 3142] shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j). Indeed, "the § 3142(g) analysis is concerned with a practical assessment of the defendant's dangerousness, rather than an adjudication of guilt for a particular offense." *United States v. Tolbert*, No. 3:09-CR-56, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) (citing *Stone*, 608 F.3d at 948); *accord United States v. Boone*, No. 5:25-CR-127, 2025 WL 3033896, at *5 (E.D. Ky. Oct. 30, 2025) (noting that the BRA "requires the Court to consider all allegations, both proven and unproven, in its calculus of the defendant's dangerousness").

sexual activities he wished to do with the UC [*Id.* at 32]. Furthermore, defendant expressed to the UC that he had already had a sexual experience with a 15-year-old the summer prior to their conversation [*Id.*].

Another undercover chat operation was conducted by an investigator in Okaloosa County, Florida [*Id.* at 35]. Specifically, on October 26, 2024, defendant contacted a Florida-based UC deputy who was posing as a father of two daughters whom he was sexually abusing [*Id.*]. During their conversation, defendant "solicited the UC deputy to have a sexual encounter with a ten-year-old child which [defendant] thought was the daughter of the UC" [*Id.*].

Both of these investigations were referred to the Knoxville Field Office of HSI in August of 2025 given defendant's location in the Eastern District of Tennessee [*Id.* at 3, 30]. Based on the evidence received, a federal search warrant was obtained on December 2, 2025, on the home of defendant [*Id.* at 4]. The execution of this search warrant led to the confiscation of 44 electronic devices, which underwent, or are currently undergoing, forensic examination [*Id.*]. As of February 20, 2026, the date the affidavit supporting the Criminal Complaint was sworn to [*id.* at 7], 8 of the 44 electronic devices were found to have child pornography on them, totaling 221 images and 24 videos [*Id.* at 4].

The forensic examinations also corroborated the findings of an earlier state search warrant obtained on defendant's Google account [*Id.* at 3–4]. In particular, the examinations reflected that defendant had "multiple communications with minor victims where he was enticing and exploiting his victims for the purpose of illicit sexual conduct

12

and/or receiving child pornography[,]" including at least one conversation dating back to 2023 [*Id.* at 3–6; *see id.* at 39–40].[3] And in one instance, defendant sent a minor victim an obscene photograph back [*Id.* at 5]. Additionally, one forensic examination revealed that on December 23, 2023, and December 25, 2023, defendant received CSAM, which he saved on one of his phones [*Id.* at 6–7].

Finally, at the hearing, the government stated that the evidence seized from defendant's home "indicated he was into sadomasochism and violence with young girls" [Doc. 17-1, p. 3]. Moreover, photographs presented at the hearing, which "depicted the space believed to have been described by [d]efendant in his chats, included spoons, ropes, chains, and other items the [g]overnment said was related to sadomasochist activities" [*Id.*].

Turning to defendant's instant appeal, he merely argues that the nature and circumstances of his offense, 18 U.S.C. § 3142(g)(1), was "too heavily weighed upon" in the Magistrate Judge's decision to order detention of defendant [Doc. 20, p. 2]. However, "[t]he court has broad discretion to determine how much weight to assign the factors listed in § 3142(g) based on the circumstances of a particular case." *United States v. Abrego*, 787 F. Supp. 3d 830, 842 (M.D. Tenn. 2025). Considering this discretion, and the seriousness and severity of the nature and circumstances of defendant's offenses as discussed *supra*, the Court does not find defendant's one-sentence contention to be

---

[3] The affidavit supporting the Criminal Complaint outlines specific communication with two minor victims who are believed to be between the ages of 10 and 13 [Doc. 3, pp. 4–6].

13

persuasive. Rather, the Court here ultimately finds that the first factor weighs in favor of defendant's detention.

### 2. Weight of the Evidence

Next, the Court is to consider the weight of evidence against defendant. 18 U.S.C. § 3142(g)(2). "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948 (citations omitted). The Court notes that "[t]his factor is somewhat duplicative of § 3142(g)(1) and (3) because, in considering a defendant's overall dangerousness, the Court must consider the facts of the crime alleged as well as evidence that the defendant has been dangerous in the past, such as criminal history[.]" *United States v. Burns*, No. 5:26-CR-2, 2026 WL 411732, at *5 (E.D. Ky. Feb. 9, 2026).

Again, defendant faces six counts of attempted enticement, two counts of sexual exploitation of a child, one count of transfer of obscene material to a child, and one count of possession of child pornography with intent to view, all of which are undeniably dangerous offenses.[4] *See Dobrowolski*, 406 F. App'x at 13; *LaFond*, 982 F. App'x at 246-47; *Hoilman*, 2023 WL 4074630, at *2; *United States v. Cornish*, 449 F. Supp. 3d 681, 687–88 (E.D. Ky. 2020) ("Allegations of enticing a child to engage in sexual activity are particularly dangerous and pose a threat the Court cannot easily mitigate[.]"). Specifically, and as echoed by courts across the country, the "sexual exploitation of children via the

---

[4] And as noted previously, nine out of ten of defendant's charged offenses are considered "crimes of violence" under the BRA. *See supra* Section IV.C.1.

internet, even without physical contact, harms children in real and lasting ways." *Pece*, 2020 WL 6263640, at *3 (citation omitted); *accord New York v. Ferber*, 458 U.S. 747, 759 (1982) (noting, in regard to child pornography, that "the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation"); *United States v. Champion*, 248 F.3d 502, 506 (6th Cir. 2001) ("Congress, in enacting § 2251(a), emphasized that 'the use of children in the production of sexually explicit materials . . . is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved . . . and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years.'" (quoting Pub. L. No. 104-208, Div. A, Title I, § 101(a))); *United States v. Mobasseri*, No. 1:17CR138, 2020 WL 3026070, at *3 (N.D. Ohio June 5, 2020) ("Each download and view of a child-pornographic image or film exacerbates the harm to the child involved in its production."); *United States v. Downs*, 406 F. Supp. 3d 1314, 1321 (N.D. Fla. 2019) ("In light of the probability of harm being inflicted and the magnitude of the likely harm, society has a 'strong interest in preventing the sexual exploitation of children.'" (quoting *United States v. Stokes*, 726 F.3d 880, 893 (7th Cir. 2013))); *United States v. Baker*, 672 F. Supp. 2d 771, 773 (E.D. Tex. 2009) ("Child pornography fosters the exploitation of innocent and vulnerable children all over the world. It causes irreparable harm to some of the weakest members of our society."); *Renteria v. Shingle Springs Band of Miwok Indians*, No. 2:16-CV-1685, 2016 WL 4000984, at *3 (E.D. Cal. July 26, 2016) (citation omitted) ("The sexual exploitation of children is not only morally repugnant, but

15

results in long-lasting and serious harm for the rest of their lives."). Thus, at their core, defendant's offenses, as noted by the Magistrate Judge, are inherently dangerous.

Several details regarding defendant's charged offenses, however, increase the weight of evidence of dangerousness beyond the intrinsic. Foremost, defendant's conduct spanned the course of several years, reflecting behavior that is not isolated but recurring and persistent [*See* Doc. 3, pp. 5–6]. The Court also notes the reasonable possibility that defendant's illicit conduct may extend further into the past. First, as noted previously, the forensic examinations of defendant's devices recovered from his residence remain ongoing [*See* Doc. 3, p. 4]. Second, and perhaps more persuasive, is that when the Virginia UC was contacted by defendant in October of 2024 on a website called "chatiw.us," in which a "large volume of users . . . have an interest in pedophilia[,]" defendant's account reflected that it had been active for 2,657 days [*Id.* at 31]. This equates to over 7 years.

Furthermore, while "[*j*]*ust one* sexually-related offense against *just one* minor is enough to imply dangerousness," *Fitzhugh*, 2016 WL 4727480, at *5 (emphasis in original), the circumstances of defendant's present offenses indicate that at least two real minors were involved. *See supra* n.2. The Court also reiterates that defendant received CSAM in December of 2023 from a known series [Doc. 3, pp. 6–7], and that investigators found more than 220 images and 20 videos of child pornography thus far on defendant's devices [*Id.* at 4]. These circumstances unquestionably implicate other minor victims. *See United States v. Bigham*, No. 2:25-MJ-310, 2025 WL 3214328, at *3 (S.D. Ohio Nov. 18,

16

2025) (citation omitted) (stating that possession of child pornography "implicates minor victims and creates a market for child exploitation").

Finally, in defendant's conversation with the Virginia UC, defendant "advised he did have sexual experience with a 15-year-old" the prior summer [Doc. 3, p. 32]. "[W]hether true or mere 'puffing,'" the Court considers defendant's statement that he engaged in hands-on illicit sexual conduct with a minor, finding it suggestive that defendant would commit a hands-on offense. *United States v. Himes*, No. 5:23-MJ-5238, 2023 WL 4745105, at *4 (E.D. Ky. July 25, 2023); *accord Tackett*, 2025 WL 1105312, at *4 (noting that the defendant's charge of enticement is "itself strongly suggestive that [the defendant] would commit a hands-on offense" and adding that "other evidence indicates [that the defendant] has committed hands-on offenses in the past").

As mentioned previously, in evaluating a defendant's overall dangerousness, the Court is to consider defendant's criminal history. *See Burns*, 2026 WL 411732, at * 5. As outlined in the United States Probation Office's ("USPO") Pretrial Services Report ("PSR"), defendant was charged in 2011 with assault (bodily injury) [PSR, p. 3].[5] This charge was ultimately dismissed in 2012 after defendant successfully completed judicial diversion and a term of probation [*Id.*]. While defendant's criminal history is *de minimis*, the Court does not find that it outweighs the inherent dangerousness of defendant's offenses

---

[5] The Court may reference the Pretrial Services Report in its *de novo* review of the Magistrate Judge's order of pretrial detention. *United States v. Carter*, No. 1:20-CR-62-1, 2021 WL 687858, at *2 (S.D. Ohio Feb. 23, 2021).

and the dangerousness demonstrated by the particular details of defendant's conduct, as discussed *supra*.

Taking into consideration all of the above, the Court finds that the weight of the evidence of dangerousness here strongly weighs in favor of detention. In his instant appeal, defendant again argues that this factor was "too heavily weighed upon" in the Magistrate Judge's decision to order detention of defendant [*See* Doc. 20, p. 2]. The Court reiterates that it "has broad discretion to determine how much weight to assign the factors listed in § 3142(g)[.]" *Abrego*, 787 F. Supp. 3d at 842.

Defendant also contends that the Magistrate Judge did not "expand on how this dangerous assertion applies to [defendant's] particular case" [*Id.*]. Defendant appears to take issue with the Magistrate Judge's sole reliance on the inherent dangerousness of his charged offenses in her finding that the § 3142(g)(2) factor weighs in favor of detention [*See* Doc. 17-1, p. 3]. Defendant's contention, however, disregards the standard of review here—*de novo*. And because the review is *de novo*, the Court makes "an independent determination of the proper pretrial detention or conditions for release[,]" and the Court "need not defer to the magistrate judge's ultimate conclusion[.]" *United States v. Brooks*, 685 F. Supp. 3d 476, 479 (E.D. Mich. 2023) (citations omitted). Thus, defendant's contention is immaterial. Furthermore, the Court's independent determination here as to the weight of the evidence of dangerousness, *see supra*, relies on both the inherent dangerousness of defendant's charged offenses as well as the dangerousness stemming from the particular allegations in this case.

18

### 3. History and Characteristics of Defendant

Next, the Court turns to defendant's history and characteristics, considering first defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings[.]" 18 U.S.C. § 3142(g)(3)(A).[6]

Defendant is 54 years old and was born in Fort Wayne, Indiana [PSR, p. 1]. Defendant has been a long-term resident of East Tennessee since 1980, and he has resided at his address in Louisville, Tennessee, for the past 10 years [*Id.* at 2]. Defendant's father passed away in 2013, and his mother, Sue Smith, is currently married and resides in Sevierville, Tennessee, with her husband, Dan Smith [*Id.* at 1]. Defendant reports having a good relationship with his mother and her husband [*Id.*]. Defendant also has a brother who resides in Seymour, Tennessee, and he reports having a good relationship with him [*Id.* at 2]. Defendant has been married four times, which all ended in divorce [*Id.*]. Defendant has three adult children, but he reports that he has not had contact with his children in many years [*Id.*].

As to education, defendant graduated from Central High School in Knoxville, Tennessee, in 1991 and attended Pellissippi State Community College in Knoxville for several years [*Id.*]. Defendant did not obtain a college degree [*Id.*]. As for employment, defendant has worked for Team Health, Apple Computers, and ADT over the past 10 years

---

[6] The Court does not find § 3142(g)(3)(B) to be applicable in defendant's case.

19

[*Id.*].  Defendant's latest employment was with National Recovery Resources as a remote employee earning approximately $2,000 per month.  According to defendant's Financial Affidavit ("FA"), as provided by the USPO, defendant has a home, for which he is still paying a mortgage, and three tracts of adjoining land [FA, p. 1].  Defendant also has upwards of $6,100 in credit card debt, and he owes approximately $7,000 in student loans [*Id.*].

As to his physical health, defendant reports that he suffers from two misaligned vertebrae, an irregular heartbeat, and allergies [PSR, p. 3].  Defendant has had three prior surgeries and currently has stitches in his left hand from a saw accident [*Id.*]  As to mental health, defendant reported no history of mental health treatment [*Id.*].  Defendant reports no substance abuse history or treatment, providing that he only consumes alcohol a "couple of times" a week [*Id.*].  As discussed in detail in the previous section, defendant has a minimal criminal history [*Id.* at 3].  Defendant has no history of failing to appear.

The Court acknowledges that some of defendant's history and characteristics favor his release, specifically his lack of a significant criminal history, his familial support, and his long-standing connection to Knoxville.  However, even without a permanent criminal record, the Court cannot ignore that the alleged conduct in this case spans at least two years [*see* Doc. 3, pp. 4–6], necessarily making it a "part of [defendant's] history and characteristics." *United States v. Risinger*, No. 3:22-CR-7, 2022 WL 1773362, at *5 (E.D. Ky. May 31, 2022); *accord Mobasseri*, 2020 WL 3026070, at *3 (stating that the defendant's lack of a criminal history before the present conviction did not mean that the

20

defendant "behaved in accordance with the law during that time[,]" citing to defendant's admission that he searched for and downloaded child pornography for over seven years). To the same point, defendant concealed his activity from his family during this timeframe. *See Mobasseri*, 2020 WL 3026070, at *3 (noting that the "defendant's ability to conceal his deviant behavior . . . from his wife, children and authorities" for a period of seven years "reflects poorly on [d]efendant's character"); *United States v. King*, No. 3:22-CR-60, 2022 WL 3645996, at *4 (E.D. Tenn. Aug. 24, 2022) (finding that the defendant's ability to conceal his activity, which included possessing, receiving, and distributing child pornography, from his family diminished the positive aspects of the defendant's history and characteristics).

Considering all the above, the Court finds, on balance, that this factor weighs slightly in favor of release. However, the Court does not find that this factor deserves significant weight, especially in light of the nature and circumstances of defendant's charged offenses as well as the weight of the evidence of dangerousness set forth *supra*.[7]

### 4. Nature and Seriousness of the Danger Posed by Defendant's Release

The final factor under § 3142(g), "the nature and seriousness of the danger to any person or the community that would be posed by the person's release[,]" weighs in favor of detention, especially in light of the presumption. 18 U.S.C. § 3142(g)(4); *see Stone*, 608

---

[7] In his appeal, defendant asserts that the § 3142(g)(3) factor was not given enough weight in the Magistrate Judge's analysis [Doc. 20, p. 3]. Given this is essentially the same argument defendant sets forth for the § 3142(g)(1) and (g)(2) factors, but reversed here, the Court finds no need to address it and relies on the same authority cited *supra*.

F.3d at 945 (noting that the presumption favoring detention remains a factor to be considered by the court as it "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial"); *United States v. Thompson*, No. 2:10-MJ-235, 2010 WL 1687754, at *2 (S.D. Ohio Apr. 23, 2010) (stating that, even if the presumption is rebutted, it still remains "to be given whatever weight the Court deems appropriate").

From the privacy of his own home, defendant is alleged to have exploited and attempted to entice several minor victims, both real and fictious, over the span of at least two years [Doc. 3, pp. 3–7, 30–39]. In brief summary, defendant requested and received illicit photographs from two minors, sent one of these minors an obscene image back, discussed plans to make a 15-year-old minor his "sex slave," and solicited a UC posing as a father to have sexual encounters with his two, minor children [*Id.*]. The Court would also underscore that, in conversing with the Virginia UC, defendant made a statement that he had hands-on sexual contact with a minor [*Id.* at 32]. And finally, a search of defendant's home revealed hundreds of images and videos of child pornography [*Id.* at 4].

As set forth in more detail *supra*, defendant's charged conduct is irrefutably serious and dangerous. *Feber*, 458 U.S. at 759; *Champion*, 248 F.3d at 506; *Dobrowolski*, 406 F. App'x at 13; *LaFond*, 692 F. App'x at 246–47; *Hoilman*, 2023 WL 4074630, at *2; *Cornish*, 449 F. Supp. 3d at 687–88; *Pece*, 2020 WL 6263640, at *3; *Mobasseri*, 2020 WL 3026070, at *3. Moreover, the harm created and perpetuated by defendant's alleged actions cannot be overly stated. *See Risinger*, 2022 WL 1773362, at *5 ("Even when there

22

is no physical contact with a child, courts have found that engaging with child exploitation materials causes real, lasting harm to real victims[.]"); *United States v. Lambert*, No. 1:16-CR-90, 2020 WL 6741311, at *3 (S.D. Ohio Nov. 17, 2020), *aff'd*, No. 20-4234, 2021 WL 2104503 (6th Cir. Mar. 31, 2021) ("The sexual exploitation of children significantly impacts a vulnerable population."). Accordingly, based on all the above and incorporating the analysis of the other § 3142(g) factors, the Court finds that defendant would pose a significant danger to the community were he to be released.

In his appeal, defendant resubmits his proposal to be released and placed in the custody of his mother, who would act as his third-party custodian [Doc. 20, p. 3]. Defendant reiterates that his mother's residence is outside of any TDOC restricted zone, and that the home would have password protected internet which he would be barred from accessing [*Id.*]. In addressing the Order of Detention, defendant argues that the Magistrate Judge doubted the suitability of his proposed conditions and his adherence to such conditions without any grounds to do so [*Id.* at 4]. And to that point, defendant asserts that "there is little, if anything, to indicate he would engage in any criminal conduct if released" [*Id.*].

The Court acknowledges defendant's proposed conditions, and the testimony of his mother, Mrs. Smith, who expressed a desire at the hearing to help her son. However, the Court concludes that no condition or combination of conditions would reasonably assure the safety of the community and adequately guard against the danger that defendant presents. First, while not in a TDOC restricted zone, the Court notes that Mrs. Smith's

23

house is 1.4 miles from a school [Doc. 17-1, p. 5 n.5]. This fact gives the Court pause, particularly in light of defendant's statement that he has had sexual contact with a minor [*see* Doc. 3, p. 32], indicating a possibility that his conduct is not entirely exclusive to internet or online communications.

The Court also finds defendant's submission that he would be "barred" from accessing the internet at his mother's home to be unpersuasive. "Courts in the Sixth Circuit have repeatedly noted that prohibiting a defendant's access to the internet while on pretrial release is impractical—if not impossible" due to the ubiquity of the internet. *Himes*, 2023 WL 4745105, at *5 (collecting cases). In other words, "'there is simply no failsafe way to prevent any and all exposure,' even if a defendant forfeits all electronic devices and is denied access to the internet." *United States v. Foster*, No. 20-5548, 2020 WL 6791572, at *3 (6th Cir. July 20, 2020) (quoting *United States v. Tang*, No. 3:19-CR-14, 2019 WL 2453655, at *4 (E.D. Ky. June 12, 2019)). Moreover, restricting a defendant's internet access is ineffectual "when one considers the fact that a person can visit websites by using cellular data, rather than WIFI." *United States v. Woodford*, No. 21-CR-20717, 2023 WL 361778, at *11 (E.D. Mich. Jan. 23, 2023) (citation omitted); *accord Cornish*, 449 F. Supp. 3d at 687 ("The myriad of Internet-capable devices available, including those that work with data plans rather than wifi access, render policing [a defendant's] Internet use almost impossible.").

The Court would also note, as specific to defendant here, that he set up his mother's internet for her [Doc. 17-1, p. 5]. This suggests to the Court that defendant has a strong

24

familiarity with his mother's internet service and also that defendant's technological knowledge may exceed his mother's in ways relevant to his instant offenses. Additionally, as discussed in the affidavits of this case, defendant's conduct spanned several platforms and involved various email accounts [Doc. 3, pp. 3–7, 31–39]. Considering these details along with the above-cited case law, the Court is not reasonably assured that it can successfully limit defendant's access to the internet or electronic devices.

The Court now turns to defendant's contention that there is no indication that he would defy any condition imposed for his pretrial release [*See* Doc. 20, p. 4]. "[A]lmost any conditional release ultimately depends on a court's assessment of a defendant's good faith intentions and predicted compliance with conditions imposed." *Cornish*, 449 F. Supp. 3d at 684 (citations omitted). Defendant's charged offenses here "pose a threat the Court cannot easily mitigate if [defendant] is released[,]" largely because of prevalence of the internet discussed *supra*. *Id.* at 687. Accordingly, the Court would have to rely on defendant's promises that he would abstain from using the internet were he to be released pending trial. The Court, however, is unwilling to rely on defendant's promises or "good faith" intentions here, particularly giving the concerning allegations present in this case. *See id.* (refusing to rely on the defendant's promise to abstain from the internet); *United States v. Sammons*, No. 2:19-CR-107, 2020 WL 613930, at *6 (S.D. Ohio Feb. 10, 2020) (stating that it is unwilling to depend on the defendant's promises to abstain and his assertion of good faith).

25

Thus, taking all of the above into consideration, the Court finds that "the nature and seriousness of the danger to any person or the community that would be posed by the person's release" weighs in favor of detention here.  18 U.S.C. § 3142(g)(4).

## V.    Conclusion

On balance, and for the reasons set forth above, the Court finds that the § 3142(g) factors ultimately weigh in favor of defendant's continued pretrial detention.  The Court is convinced that no condition or combination of conditions for release would reasonably assure the safety of the community.  Accordingly, defendant's appeal [Doc. 20] is hereby **DENIED**.  Defendant shall remain detained pending trial.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE